CARLTON EDWARD BOWSER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bowser v. Commissioner
Docket No. 6239-76.
United States Tax Court
T.C. Memo 1980-483; 1980 Tax Ct. Memo LEXIS 104; 41 T.C.M. (CCH) 275; T.C.M. (RIA) 80483; October 27, 1980, Filed Carlton Edward Bowser, Jr., pro se. Stephen R. Takeuchi, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Addition to Tax
Year
Deficiency
[1] Sec. 6653(b) 1972
$2,171.00
$ 1,085.50
1973
3,879.87
1,934.94
1974
3,119.25
1,559.63
*105 In the alternative the respondent has alleged in his answer that, if the Court should decide that the petitioner is not liable for the section 6653(b) additions to tax for fraud for any of the years, then the petitioner is liable for the additions to tax for delinquency under section 6651(a) and for the additions to tax for negligence under section 6653(a) with respect to each year. On January 4, 1978, respondent filed a motion for partial summary judgment with respect to the deficiencies for the years 1972, 1973 and 1974. On February 22, 1978, Judge Irwin of this Court granted respondent's motion by an Order which provided in pertinent part as follows: ORDERED that so much of respondent's motion filed January 4, 1978, as pertains to the case at Docket No. 6239-76 is granted and the decision to be entered in due course in that case will determine deficiencies in income taxes to be due from petitioner for the taxable years 1972, 1973, and 1974, in the respective amounts of $2,171.00, $3,879.87 and $3,119.25. That case remains before this Court with respect to the additions to tax asserted to be due under Section 6653(b), Int. Rev. Code of 1954, and *106 will proceed to trial in due course on that issue. Thus, the principal issue remaining for decision is whether any part of the underpayment of income tax for each of the years 1972, 1973 and 1974 was due to petitioner's fraud with intent to evade tax so as to make him liable for the section 6653(b) additions to tax or, alternatively, whether he is liable for the additions to tax under sections 6651(a) and 6653(a), respectively. Collaterally, the petitioner has questioned the jurisdiction of this Court to decide this case and has raised serveral constitutional and other objections. Petitioner did not sufficiently respond to the requests for admissions previously served on him and filed with the Court by the respondent on June 1, 1977, and July 7, 1980, and therefore the facts set forth therein have been deemed established for the purposes of this case. See Rules 90 and 104(c)(1), Tax Court Rules of Practice and Procedure.
FINDINGS OF FACT Carlton Edward Bowser, Jr. (petitioner) was a legal resident of Oakland, Maryland, when he timely filed his petition in this case on July 6, 1976. On April 15, 1973, the petitioner signed a Form 1040 (Individual Income Tax Return) which *107 was received by the internal Revenue Service Center at Philadelphia. The Form 1040 is incomplete and incorrect. It contains no information with respect to income, deductions or credits. Attached to the Form 1040 are several pages under the caption "Petition and Protest" asserting various constitutional objections to the Federal income tax laws. On April 15, 1974, the petitioner signed a Form 1040 (Individual Income Tax Return) which was subsequently received by the Internal Revenue Philadelphia Service Center. Except for reporting on line 9 of the Form 1040 wages or other compensation in the amount of $3,675, the document is incomplete and incorrect. It contains no information with respect to deductions or credits. Attached to the Form 1040 are several pages under the caption "Petition and Protest" raising certain constitutional objections to the Federal income tax laws. On April 15, 1975, the petitioner signed a Form 1040 (Individual Income Tax Return) which was subsequently received by the Internal Revenue Philadelphia Service Center. The Form 1040 is incomplete and incorrect. It contains no information with respect to income, deductions or credits. Several places on *108 the face of the Form 1040 appear the words "Object: Self-Incrimination." Attached to the Form 1040 are several pages under the capiton "Petition and Protest" asserting various constitutional objections to the Federal income tax laws. During the years 1972, 1973 and 1974 the petitioner was a self-employed, commissioned insurance agent. He also received rents from certain properties in those years. Forms 1099 were issued to the petitioner in 1972, 1973 and 1974 by the J.A. Goodwin Agency and by Goodwin & Gruber Agency, Inc. Petitioner also worked as a commissioned insurance agent for the Bowser Insurance Agency during the years in issue. Petitioner received the following insurance commissions during the years in issue which were not reported as income on the Forms 1040 he sent to the Internal Revenue Service: Payor
1972
1973
1974
J.A. Goodwin Agency
$4,439.53
$ 4,998.08
$4,033.47
Goodin & Gruber Agency
559.84
667.23
630.00
Bowser Insurance Agency
6,616.00
11,001.00
9,081.00
During 1972, 1973 and 1974 the petitioner received gross rental income of $2,245 from the rental of a house. After allowing for rental expenses, the net profit on *109 the rental of the house was $300 per year. During 1972, 1973 and 1974 the petitioner rented a trailer for a net profit after rental expenses of $300 per year. Petitioner failed to maintain, and refused to submit for examination by respondent, any books of account and records of his income producing activities for the years 1972, 1973 and 1974. Petitioner failed to cooperate with Revenue Agent Thomas Lyden during the investigation of petitioner's Federal income tax returns for the years in issue and attempted to thwart an effective investigation of those taxable years. Petitioner failed to report his correct taxable income for the years 1972, 1973 and 1974. He failed to pay his income tax liabilities for those years and he concealed or contrived to conceal his gross income. ULTIMATE FINDINGS OF FACT 1. Petitioner had the following unreported income: Year
Amount
1972
$12,214.00
1973
13,591.31
1974
14,344.47
2. There are income taxes due and owing by the petitioner as follows: Year
Amount
1972
$2,171.00
1973
3,879.87
1974
3,119.25
3. The underpayments of income taxes which were required to be included in petitioner's *110 Federal income tax returns for the years 1972, 1973 and 1974 were due to the fraud of petitioner with intent to evade tax. OPINION 1. Jurisdiction
In a document entitled "Petition for Redress of Grievances and Bill of Complaint" lodged with the Court on August 1, 1980, and filed at the Pittsburgh Session on September 19, 1980, the petitioner contends, as he did at the trial, that this Court lacks jurisdiction of this case. The contention is without merit. Where, as here, a taxpayer receives a notice of income tax deficiencies (the notice was mailed to petitioner on April 12, 1976) and he files a timely petition with the United States Tax Court, he gives the Tax Court exclusive jurisdiction. Section 6512(a).The mere filing of the petition in the Tax Court is enough to deprive a United States District Court of jurisdiction for years as to which the petition was filed. See United States v. Wolf,238 F.2d 447 (9th Cir. 1956); Brooks v. Driscoll,114 F.2d 426 (3d Cir. 1940). It is significant that it is the taxpayer's action in filing a valid petition in the Tax Court, under circumstances which give the Court jurisdiction, and not any action *111 taken by the Court, that bars a subsequent suit. Elbert v. Johnson,164 F.2d 421, 424 (2d Cir. 1947). As we said in Dorl v. Commissioner,57 T.C. 720, 722 (1972), affd. 507 F.2d 406 (2d Cir. 1974): It is now a settled principle that a taxpayer may not unilaterally oust the Tax Court from jurisdiction which, once invoked, remains unimpaired until it decides the controversy. See Main-Hammond Land Trust,17 T.C. 942, 956 (1951), affd. 200 F.2d 308 (C.A. 6, 1952); United States v. Shepard's Estate,196 F. Supp. 281, 284 (N.D. N.Y. 1961), affirmed as modified on other issues 319 F.2d 699 (C.A. 2, 1963); and Nash Miami Motors, Inc. v. Commissioner,358 F.2d 636 (C.A. 5, 1966), affirming a Memorandum Opinion of this Court. See also Burns, Stix Friedman & Co., Inc. v. Commissioner,57 T.C. 392 (1971); Bowser, Sr. v. Commissioner, 78-1 USTC par. 9102, 40 AFTR 2d 77-5531 (3d Cir. 1977). In an earlier case involving this petitioner (Carlton Edward Bowser, Jr., Dkt. No. 5544-75) with respect to the year 1971, the Court of Appeals *112 for the Fourth Circuit said in an unpublished per curiam opinion dated October 5, 1979, affirming an Order and Decision of this Court: On appeal Bowser attacks the constitutional authority of the Tax Court to adjudicate his tax liability. The constitutionality of the Tax Court has been explicitly sustained in a number of decisions. See,e.g.,Melton v. Kurtz,575 F.2d 547 (5th Cir. 1978); Nash Miami Motors, Inc. v. Commissioner,358 F.2d 636 (5th Cir.), cert.denied,385 U.S. 918 (1966); Martin v. Commissioner,358 F.2d 63 (7th Cir.), cert.denied,385 U.S. 920 (1966); Willmut Gas & Oil Co. v. Fly,322 F.2d 301 (5th Cir. 1963), cert.denied,375 U.S. 984 (1964). SeealsoAmos v. Commissioner,360 F.2d 358 (4th Cir. 1965). Furthermore, in 1969 Congress altered the status of the Tax Court from that of an "independent agency in the Executive Branch of Government" to a "court of record" established under Article I of the Constitution of the United States.The authority of Congress to establish specialized courts or courts *113 of limited jurisdiction outside the authority of Article III of the Constitution has long been recognized. SeeWilliams v. United States,289 U.S. 553 (1933); Ex parte Bakelite Corp.,279 U.S. 438 (1929). Accordingly, we hold that this Court has jurisdiction over the disposition of this case. 2. Constitutional Arguments
At different times, in his pleadings and documents as well as orally at the trial, the petitioner has advanced an array of constitutional arguments, all of which lack merit. We will comment on some of them. Initially, it is important to point out that the Court of Appeals for the Fourth Circuit has previously rejected some of petitioner's arguments in its unpublished per curiam opinion dated October 5, 1979, in Carlton Edward Bowser, Jr., Dkt. No. 5544-75, relating to the year 1971: The claim that legal tender is only gold and silver and the money system of the United States is unconstitutional is clearly spurious. Nyhus v. Commissioner,594 F.2d 1213, 1215 (8th Cir. 1979); United States v. Wangrud,533 F.2d 495 (9th Cir.), cert.denied,429 U.S. 818 (1976); *114 United States v. Daly,481 F.2d 28 (8th Cir.), cert.denied,414 U.S. 1064 (1973). The specific answer to Bowser's contention is that Article I, Section 10 of the United States Constitution prohibits the states from declaring legal tender anything other than gold or silver, but does not limit Congress' power to declare what shall be legal tender for all debts. Legal Tender Case,110 U.S. 421, 446 (1884). Congress has declared federal reserve notes legal tender, 31 U.S.C. § 392, and federal reserve notes are taxable dollars. United States v. Rifen,577 F.2d 1111 (8th Cir. 1978). Further, the requirement of filing tax returns in accordance with the provisions of the Internal Revenue Code does not violate and individual's Fifth Amendment privilege against self-incrimination. SeeUnited States v. Sullivan,274 U.S. 259, 263 (1927). The Supreme Court has stated that "the questions in [an] income tax return [are] neutral on their face and directed at the public at large," Garner v. United States,424 U.S. 648, 660-61 (1976), quotingAlbertson v. SACB,382 U.S. 70, 79 (1965), *115 and, therefore, taxpayer may not assert a blanket refusal to answer any questions on his tax return based upon the privilege against self-incrimination. Albertson v. SACB,382 U.S. at 79. The documents submitted by the taxpayer must contain data sufficient to enable the IRS to compute and assess taxpayer's proper tax liability without further investigation. SeeMack v. Alexander,575 F.2d 488 (5th Cir. 1978); United States v. Porth,426 F.2d 519, 523 (10th Cir.), cert.denied,400 U.S. 824 (1970). Here, Bowser failed to respond in a meaningful manner to any of the questions regarding his taxable income and, therefore, the IRS was entitled to use the bank deposits method of reconstructing income. Bowser never established any basis for his allegation that responding to the questions on Form 1040 would tend to incriminate him. The court, not the taxpayer, is the final arbiter of the extent to which the privilege applies, Hoffmann v. United States,341 U.S. 479, 486 (1951). It is clear that Bowser's blanket assertion of the privilege against self-incrimination did not relieve him of the obligation *116 of filing proper tax returns or paying the tax in fact owed for 1971. SeeUnited States v. Daly,481 F.2d 28, 30 (8th Cir.), cert.denied,414 U.S. 1064 (1973). Petitioner's main attack on the constitutionality of the Federal income tax statute is that as a graduated direct tax on income it was not within the intended scope of the Sixteenth Amendment to the Constitution. According to petitioner, the framers of the Sixteenth Amendment envisioned an indirect excise tax on corporations. Petitioner's constitutional challenge to the Federal income tax must be rejected. The constitutionality of the Federal income tax laws passed since the enactment of the Sixteenth Amendment has been upheld judicially on too many occasions for us presently to rethink the underlying validity thereof. See, e.g., Brushaber v. Union Pac. R.R. Co.,240 U.S. 1 (1916); Stanton v. Baltic Mining Co.,240 U.S. 103 (1916); Cupp v. Commissioner,65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977). Furthermore, the Sixteenth Amendment was enacted in response to the Supreme Court's decision in Pollock v. Farmers' Loan & Trust Co.,157 U.S. 429 (1895), *117 which held unconstitutional the income tax of 1894 as a direct tax without apportionment. The "whole purpose" of the Sixteenth Amendment, as stated by the Supreme Court in Brushaber v. Union Pac. R.R. Co.,supra at 18 was "to relieve all income taxes when imposed from apportionment from a consideration of the source whence the income was derived." Thus, since the ratification of the Sixteenth Amendment it is immaterial, with respect to income taxes, whether the tax is a direct or an indirect tax. With regard to his other constitutional claims, petitioner fares no better than he does with his principal challenge. His contention that respondent's notice of deficiency was an impermissible bill of attainder is without merit. See Porth v. Brodrick,214 F.2d 925 (10th Cir. 1954). A bill of attainder, according to Black's Law Dictionary, 162 (4th ed. rev. 1968), is "A legislative act, directed against a designated person, pronouncing him guilty of an alleged crime, (usually treason) without trial or conviction according to the recognized rules of procedure, and passing sentence of death and attainder upon him." It is wholly irrelevant to speak *118 of a bill of attainder in this civil proceeding involving petitioner's income tax liability. It is clear that respondent's deficiency determination was not arbitrary, and it did not violate petitioner's Fifth Amendment rights. See Roberts v. Commissioner,62 T.C. 834 (1974); Cupp v. Commissioner,supra;Bowser, Sr. v. Commissioner, 78-1 USTC par. 9102, 40 AFTR 2d 77-5531 (3d Cir. 1977). The deficiency determination is presumptively correct, and petitioner has the burden of proving that the deficiencies are erroneous. Welch v. Helvering,290 U.S. 111 (1933). His contention that placing the burden of proof upon him violates his Fifth Amendment privilege against self-incrimination is without substance. Neither he nor respondent has given the Court any reason to believe that a criminal investigation is either presently underway or even a remote possibility. Roberts v. Commissioner,supra.See also Rogers v. United States,340 U.S. 367 (1951); Figueiredo v. Commissioner,54 T.C. 1508 (1970), affd. per order (9th Cir. 1973). The sole purpose of the persent *119 civil case is to determine the existence, if any, of a Federal income tax liability, and, accordingly, the general rule with respect to burden of proof as to deficiencies in tax cases is appropriate. See Hartman v. Commissioner,65 T.C. 542 (1975); Cupp v. Commissioner,supra.
Petitioner's Seventh Amendment right to a jury trial has not been violated here. He was afforded full opportunity to represent himself at trial pursuant to Rule 24(b), Tax Court Rules of Practice and Procedure. There is no right to a jury trial in the Tax Court, and the denial thereof does not violate the Seventh Amendment. Swanson v. Commissioner,65 T.C. 1180 (1976); Cupp v. Commissioner,65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977); Bowser, Sr. v. Commissioner,supra.
Petitioner's claim that the Federal income tax places him in a position of involuntary servitude in contravention of the Thirteenth Amendment is unsubstantial and without merit. Porth v. Brodrick,supra. Nor does it matter that the petitioner has never voluntarily submitted to the jurisdiction of the *120 Law Merchant. 3. Section 6653(b) Additions to Tax
The issue of fraud is one of fact to be determined upon a consideration of the entire record. Stratton v. Commissioner,54 T.C. 255 (1970). The Commissioner bears the burden of proving fraud. Section 7454(a); Rule 142(b) Tax Court Rules of Practice and Procedure. Fraud is never presumed, but must be affirmatively established by clear and convincing evidence. Beaver v. Commissioner,55 T.C. 85 (1970). Direct evidence of fraudulent intent is seldom available and whether it exists must be determined from the conduct of the taxpayer and the surrounding circumstances. We hold on this record that respondent has proved fraud by clear and convincing evidence. The consistent understatements of substantial amounts of income over several years are standing alone, persuasive evidence of fraudulent intent. United States v. Calderon,348 U.S. 160 (1954); Schwarzkopf v. Commissioner,246 F.2d 731 (3d Cir. 1957), affirming a Memorandum Opinion of this Court; Rogers v. Commissioner,111 F.2d 987 (6th Cir. 1940), affg. 38 B.T.A. 16 (1938); *121 Arlette Coat Co. v. commissioner,14 T.C. 751 (1950). Certainly, repeated understatements of income in successive years when coupled with other circumstances showing an intention to conceal or misstate taxable income present a basis on which this Court may properly find fraud. Bryan v. Commissioner,209 F.2d 822, 824 (5th Cir. 1954), cert. denied 348 U.S. 912 (1955); Jenkins v. United States,313 F.2d 624 (5th Cir. 1963); Farber v. Commissioner,44 T.C. 408 (1965); Sunbrock v. Commissioner,48 T.C. 55 (1967); Lee v. United States,466 F.2d 11 (5th Cir. 1972). Here the petitioner failed to report any of his income from insurance commissions or from rental proprty. There are other indicia of fraud present in this case. First, the petitioner failed and refused to furnish books and records of his income producing activities. Lollis v. Commissioner,595 F.2d 1189 (9th Cir. 1979); Estate of Mazzoni v. Commissioner,451 F.2d 197 (3d Cir. 1971); Otsuki v. Commissioner,53 T.C. 96 (1969). Second, the petitioner did not cooperate *122 with resondent's agent during his investigation. Lord v. Commissioner,525 F.2d 741 (9th Cir. 1975); Powell v. Granquist,252 F.2d 56 (9th Cir. 1958). And, third, he concealed his income and attempted to thwart the revenue agent's investigation for the years in issue. [2]Gajewski v. Commissioner,67 T.C. 181 (1976), affd. by unpublished Order (8th Cir. 1978). Accordingly, after examining and evaluating all the facts contained in this record, we have found and hold that the underpayments of tax for each of the years at issue were due to the petitioner's fraud. Therefore, we sustain the additions to tax under section 6653(b). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 194, as amended and in effect for the years in issue, unless otherwise indicated.↩
2. Petitioner also refused without legal justification to testify at the trial when he was called as an adverse witness by respondent's counsel. His Fifth Amendment↩ claim of privilege against self-incrimination is without substance because a criminal investigation is neither presently underway nor a remote possibility.